[No. S088807. July 23, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMIE DALE OTTO, Defendant and Appellant.

COUNSEL

Ozro William Childs, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Linda M. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BROWN, J.—In this case we decide whether Welfare and Institutions Code[1] section 6600, subdivision (a)(3) (section 6600(a)(3)), which permits the details of predicate offenses to be proven by documentary evidence in a sexually violent predator (SVP) commitment proceeding, allows the admission of multiple hearsay that does not fall within any exception to the hearsay rule, and if so, whether reliance on this evidence violates a defendant's right to due process. The Court of Appeal concluded such hearsay was admissible and reliance on the evidence did not contravene defendant's due process rights. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 1991, Jimmie Dale Otto pled no contest to four felony counts of lewd and lascivious conduct on a child less than 14 years of age (Pen. Code, § 288, subd. (a)). The factual basis for the plea was "contained

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

in the police report." The four counts involved four different victims—K.W., M.S., A.S., and D.S. Dr. Charlene Steen, appointed to examine Otto, stated in her report, which was attached to the presentence report, that Otto admitted he touched K.W. under her pants on one occasion, tickling her buttocks and "private areas" without any sexual intent. Otto also told the probation officer he tickled K.W. on her bottom under her panties. He denied having molested any of the S. children, and stated he had pled no contest because his attorney told him this was the best possible deal. On December 13, 1991, Otto was sentenced to 12 years in state prison.

On February 27, 1998, the People filed a petition seeking Otto's commitment as an SVP. Otto moved in limine to exclude "police or other hearsay reports" and prevent psychological evaluators from relying on them. The trial court denied the motion. Otto waived his right to a jury trial. Both the People and Otto presented experts who reviewed and relied on the presentence report and other documents. As relevant here, the People's three experts[2] concluded two of Otto's prior offenses involved substantial sexual conduct.[3] Indeed, although one defense expert, who did not testify, opined in his written report Otto was not likely to engage in sexually violent criminal behavior as a result of his diagnosed mental disorder, he also concluded Otto had been convicted of sexually violent predatory offenses against two or more victims. The other defense expert declined to offer an opinion regarding this latter issue, although he noted in his written report "the descriptions of the crimes strongly suggest that they included 'sexual violence.' "[4] The trial court found beyond a reasonable doubt that Otto was an SVP within the meaning of section 6600, and ordered him committed to Atascadero State Hospital or other secure facility for two years.

The Court of Appeal affirmed, and denied Otto's subsequent petition for rehearing. We granted Otto's petition for review, and limited the issues to whether section 6600(a)(3) allows the admission of multiple hearsay that does not fall within any exception to the hearsay rule, and if so, whether reliance on this evidence violates a defendant's right to due process.

---

[2]At the People's request, the trial court admitted the abstract of judgment and presentence report from Otto's felony convictions for molesting K.W., M.S., A.S., and D.S., a 1991 evaluation by Dr. Steen that accompanied the presentence report, the written psychological evaluations of Dr. Zinik, Dr. Jackson, and Dr. Sreenivasan, and the notification of evaluation as an SVP.

[3]In addition to this conclusion which is at issue here, the People's experts relied on additional factors, such as Otto's admission he had molested his minor stepchildren (not the same victims as those in the predicate offenses) and his substance abuse problem, in opining Otto satisfied the criteria for the Sexually Violent Predators Act (SVPA), section 6600 et seq.

[4]At Otto's request, the trial court admitted the written psychological evaluations of Dr. Halon and Dr. Owen.

## II. Discussion

### A. *Overview of the SVPA*

In enacting the SVPA, "the Legislature expressed concern over a select group of criminal offenders who are extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes. The Legislature indicated that to the extent such persons are currently incarcerated and readily identifiable, commitment under the SVPA is warranted immediately upon their release from prison. The Act provides treatment for mental disorders from which they currently suffer and reduces the threat of harm otherwise posed to the public. No punitive purpose was intended." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143-1144 [81 Cal.Rptr.2d 492, 969 P.2d 584] (*Hubbart*).)

The requirements for classification as an SVP are set forth in section 6600, subdivision (a) and related provisions. (*Hubbart, supra,* 19 Cal.4th at p. 1144.) As relevant to the issues presented here, first an SVP must suffer from "a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1); *Hubbart, supra,* 19 Cal.4th at p. 1144.) Second, an SVP must have been "convicted of a sexually violent offense against two or more victims." (§ 6600, subd. (a)(1); *Hubbart, supra,* 19 Cal.4th at p. 1145.) A " '[s]exually violent offense' " refers to certain enumerated sex crimes, including violation of Penal Code section 288, subdivision (a), "committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (Welf. & Inst. Code, § 6600, subd. (b); *Hubbart, supra,* 19 Cal.4th at p. 1145.) In the alternative, and relevant here, "If the victim of an underlying offense that is specified in subdivision (b) of Section 6600 is a child under the age of 14 and the offending act or acts involved substantial sexual conduct, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600." (§ 6600.1, subd. (a); *People v. Superior Court* (*Johannes*) (1999) 70 Cal.App.4th 558, 562 [82 Cal.Rptr.2d 852] [§ 6600.1 modifies § 6600, subd. (b), such that someone who commits two or more specified sex crimes involving substantial sexual conduct against children under 14 is subject to the SVPA even if his crimes were not committed with force, violence, menace, or fear].) " 'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." (§ 6600.1, subd. (b).)

"[P]rior crimes play a limited role in the SVP determination." (*Hubbart, supra,* 19 Cal.4th at p. 1145.) The conviction "constitute[s] evidence that

may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination." (§ 6600(a)(3).) Rather, the trier of fact "may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others . . . ." (*Ibid.*)

"At trial, the alleged predator is entitled to 'the assistance of counsel, the right to retain experts or professional persons to perform an examination on his or her behalf, and have access to all relevant medical and psychological records and reports.' " (*Hubbart, supra,* 19 Cal.4th at p. 1147, quoting § 6603, subd. (a).) "Either party may demand and receive trial by jury." (*Hubbart,* at p. 1147, citing § 6603, subds.· (a), (b); see § 6603, subd. (d).)

"The trier of fact is charged with determining whether the requirements for classification as an SVP have been established 'beyond a reasonable doubt.' " (*Hubbart, supra,* 19 Cal.4th at p. 1147, quoting § 6604.) Any jury verdict must be unanimous. (§ 6603, subd. (e).) "If the state fails to carry this burden, the person is released from prison when his term expires." (*Hubbart, supra,* 19 Cal.4th at p. 1147, citing § 6604.) "However, where the requisite SVP findings are made, 'the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health . . . .' " (*Ibid.*) "Confinement generally cannot exceed two years unless a new petition is filed and an extended commitment is obtained from the court." (*Ibid.*)

### B. *Analysis*

#### 1. *Admission of Multiple Hearsay*

■ We first consider whether section 6600(a)(3), which permits the details of predicate offenses to be proven by documentary evidence in an SVP commitment proceeding, allows the admission of multiple hearsay that does not fall within any exception to the hearsay rule. Section 6600(a)(3) provides in relevant part: "The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, *may be shown by documentary evidence, including, but not limited to,* preliminary hearing transcripts, trial transcripts, *probation and sentencing reports*, and evaluations by the State Department of Mental Health." (Italics added.)

By its terms section 6600(a)(3) authorizes the use of hearsay in presentence reports to show the details underlying the commission of a predicate

offense. It is difficult to interpret the language "may be shown by documentary evidence, including . . . probation and sentencing reports," in any other manner. (*Ibid.*) Indeed, the "details underlying the commission of" (*ibid.*) the crime could only be shown by hearsay since presumably the court officer who prepared the report was not a percipient witness to the crime.

Otto contends, however, that while "the Legislature intended to create an exception to the hearsay rule to allow the described documents to be admitted in evidence," it did not intend to repeal Evidence Code section 1201 and "admit without restriction hearsay found in such documents." Thus, according to Otto, the presentence report was admissible, but the victim statements contained in the report were not admissible unless they fell within an exception to the hearsay rule, such as a declaration against interest or a spontaneous declaration.

Evidence Code section 1200, subdivision (b) provides, "Except as provided by law, hearsay evidence is inadmissible." "[E]xceptions to the hearsay rule are not limited to those enumerated in the Evidence Code; they may also be found in other codes and decisional law." (*In re Malinda S.* (1990) 51 Cal.3d 368, 376 [272 Cal.Rptr. 787, 795 P.2d 1244] (*Malinda S.*), now superseded by statute.) Evidence Code section 1201 provides, "A statement within the scope of an exception to the hearsay rule is not inadmissible on the ground that the evidence of such statement is hearsay evidence if such hearsay evidence consists of one or more statements each of which meets the requirements of an exception to the hearsay rule."

As noted, section 6600(a)(3) expressly permits the use of probation and sentencing reports to show "[t]he details underlying the commission of an offense." This provision implicitly authorizes the admission of hearsay statements in those reports. The Legislature is undoubtedly familiar with the typical contents of such reports, which include "[t]he facts and circumstances of the crime" and "the victim's statement or a summary thereof, if available." (Cal. Rules of Court, rule 4.411.5(a)(2),. (5)(i); hereafter all references to rules are to the California Rules of Court.) The source of the details of the prior offense is not the author of the report, but the victims. Rule 4.411.5 contemplates that police reports will be used as a source of information for summarizing the crime in the presentence report. (See rule 4.411.5(a)(7)(i); *People v. Superior Court (Howard)* (1999) 70 Cal.App.4th 136, 154 [82 Cal.Rptr.2d 481] ["Probation reports in felony cases necessarily include victim hearsay statements, pursuant to the requirements for probation reports set forth in" rule 4.411.5(a)(5)]; *People v. Valdivia* (1960) 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832] ["A probation officer could not make an investigation and report of the nature required by Penal Code,

section 1203, if restricted to the rules of evidence. Much of the prior record and history of a defendant, as well as the circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information"].) By permitting the use of presentence reports at the SVP proceeding to show the details of the crime, the Legislature necessarily endorsed the use of multiple-level-hearsay statements that do not otherwise fall within a hearsay exception. ·

This interpretation is also supported by the legislative history. As originally enacted, the SVPA did not permit the use of documentary evidence. (See Stats. 1995, ch. 763, § 3.) The Legislature modified the act after prosecutors complained that "they must bring victims back to court to re-litigate proof of prior convictions." (Sen. Com. on Crim. Proc., analysis of Assem. Bill No. 3130 (1995-1996 Reg. Sess.) as amended May 24, 1996, p. 7.) The bill amending the statute allowed "the existence of any prior convictions to be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, could be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, probation and sentencing report[s], and evaluation[s] by [the Department of Mental Health]." (*Ibid.*)

Thus, the Legislature apparently intended to relieve victims of the burden and trauma of testifying about the details of the crimes underlying the prior convictions. Moreover, since the SVP proceeding may occur years after the predicate offense or offenses, the Legislature may have also been responding to a concern that victims and other percipient witnesses would no longer be available. Given these purposes, the only reasonable construction of section 6600(a)(3) is that it allows the use of multiple-level hearsay to prove the details of the sex offenses for which the defendant was convicted. If the amendment to section 6600, subdivision (a) is construed as excluding multiple hearsay, i.e., victim statements, contained in probation and sentencing reports, then victims would be required to testify—an interpretation that would defeat the apparent purposes of the amendment.

Indeed, under Otto's construction, the amendment to Welfare and Institutions Code section 6600, subdivision (a) would have no practical effect. At the time of the amendment, Evidence Code section 1201 already provided for admission of hearsay falling within an established exception. Thus, amending Welfare and Institutions Code section 6600, subdivision (a) to provide for the admission of hearsay that was already admissible would have been meaningless.

Otto asserts that the legislative history also indicates that the bill's author, Assemblywoman Paula Boland, Chair of the Assembly Committee on Public

Safety, thought the amendment was consistent with existing law. In an undated committee statement, Assemblywoman Boland describes the proposed amendment as providing for "proof of prior convictions by consistent evidence and documentary proof consistent with mentally disordered offender procedures." (Assemblywoman Boland, Assem. Com. on Public Safety, Statement re Assem. Bill No. 3130 (1995-1996 Reg. Sess.) p. 2.) Otto states, "We do not pretend to know what 'consistent evidence' means, other than to observe that the admission into evidence of hearsay statements to the police is not, ordinarily, consistent with the rules of evidence" and that in a mentally disordered offender case, the prisoner retains the "right to require the prosecutor to prove the details of such underlying crimes by admissible evidence." Even if correct, the victim hearsay evidence in this case was made admissible by the language of section 6600(a)(3). We are loath to ignore the express terms of the statute because of an obscure remark made by one legislative member.

Otto contends admission of the victims' hearsay statements is also precluded by *People v. Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184]. In *Reed*, we held that statements from a preliminary hearing transcript that fell within a hearsay exception could be used to prove the defendant's prior assault conviction involved the personal use of a dangerous or deadly weapon. (*Reed*, at p. 220.) In so doing, we distinguished cases involving the use of prison records hearsay (presumably not falling within an exception), which was "specifically authorized" by statute. (*Id.* at p. 230.) Similar multiple hearsay statements contained in a probation officer's report that did not identify the declarant or fall within any hearsay exception were held inadmissible. (*Id.* at pp. 220, 230.) Here, unlike *Reed*, the hearsay statements at issue fall within an express statutory exception similar to the prison records discussed in *Reed*, and the declarants are clearly identified.

### 2. *Alleged Violation of Due Process*

Otto further contends that even if the Legislature intended to authorize the admission of multiple hearsay that does not fall within any previously established hearsay exception, reliance on such evidence violates his due process right to confrontation and "concomitant right to be convicted only if the prosecution proves its case by reliable evidence."

Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections. (*Foucha v. Louisiana* (1992) 504 U.S. 71, 80 [112 S.Ct. 1780, 1785-1786, 118 L.Ed.2d 437].) A defendant challenging the statute on due process grounds carries a heavy burden. Courts have a " 'duty to uphold a

statute unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity.' " (*People v. Hansel* (1992) 1 Cal.4th 1211, 1219 [4 Cal.Rptr.2d 888, 824 P.2d 694].)

"Once it is determined that due process applies, the question remains what process is due." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484].) We have identified four relevant factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official. (*Malinda S., supra,* 51 Cal.3d at p. 383.)

 Applying these factors to reliance on the victims' hearsay statements in this case, we consider first that the private interests that will be affected by the official action are the significant limitations on Otto's liberty, the stigma of being classified as an SVP, and subjection to unwanted treatment. (See *Vitek v. Jones* (1980) 445 U.S. 480, 495 [100 S.Ct. 1254, 1264-1265, 63 L.Ed.2d 552].)

Second, we consider the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Here, the parties agree the victim hearsay statements must contain special indicia of reliability to satisfy due process. (See *In re Lucero L.* (2000) 22 Cal.4th 1227, 1247-1248 [96 Cal.Rptr.2d 56, 998 P.2d 1019] (*Lucero L.*); *id.* at pp. 1250-1251 (conc. opn. of Kennard, J.) [out-of-court statements of a child who is subject to a jurisdictional hearing and disqualified as a witness because of the lack of capacity to distinguish between truth and falsehood at the time of testifying may not form the sole basis for a jurisdictional finding unless they show special indicia of reliability].) We agree. As Otto notes, the hearsay at issue in this case permeates not only the substantial sexual conduct component of the prior crime determination, but also the psychological experts' "conclusion that [Otto] was and remained a pedophile . . . likely to reoffend." (See *Addington v. Texas* (1979) 441 U.S. 418, 429 [99 S.Ct. 1804, 1811, 60 L.Ed.2d 323] [factual issues resolved in the commitment proceeding "represent only the beginning of the inquiry. Whether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the *meaning* of the facts which must be interpreted by expert psychiatrists and psychologists"].) Thus, if these facts are unreliable, a significant portion of the

foundation of the resulting SVP finding is suspect. Moreover, while the current SVP commitment is for only two years, Otto raises an arguable concern he will be estopped by the finding below from relitigating the issue of whether the prior crimes involved substantial sexual conduct at any future SVP proceedings.

In evaluating the reliability of hearsay statements in a presentence report, a court may consider numerous factors, including the context in which the statements appear. The presentence report is written by a court officer regarding a crime to which the defendant either pled or was found guilty. Transcripts from any preliminary hearing or trial held regarding the predicate conviction are also pertinent, as well as any indicia the defendant challenged the accuracy of the hearsay statements at the underlying criminal proceeding. Relevant factors further include the circumstances surrounding the making of the statement, if known, such as spontaneity and consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, lack of motive to fabricate, and whether the hearsay statement was corroborated. (Cf. *Lucero L., supra,* 22 Cal.4th at p. 1239.)

Not surprisingly, the parties disagree as to whether the victims' hearsay statements here were reliable. We conclude the victims' hearsay statements possess sufficient indicia of reliability to satisfy due process.

The most critical factor demonstrating the reliability of the victim hearsay statements is that Otto was convicted of the crimes to which the statements relate. This factor will nearly always be present in an SVP proceeding because the SVPA requires conviction "of a sexually violent offense against two or more victims." (§ 6600, subd. (a)(1).) Thus, a prerequisite to considering the presentence report is a conviction for the crime to which the hearsay statements relate. As a result of such a conviction, some portion, if not all, of the alleged conduct will have been already either admitted in a plea or found true by a trier of fact after trial.

Here, Otto pled no contest to the prior crimes. In so doing, he stated the factual basis for his plea was contained in the police reports. Thus, unlike the typical scenario in a dependency proceeding in which a parent disputes the factual allegations, such as in *Lucero L.,* Otto's plea admitted the truth of the victims' statements.

Otto asserts that one can violate Penal Code section 288, subdivision (a) by any touching committed with lewd intent. (*People v. Martinez* (1995) 11 Cal.4th 434, 451-452 [45 Cal.Rptr.2d 905, 903 P.2d 1037].) Thus, he

contends, his no contest plea admits only this conduct, not the substantial sexual conduct described in the presentence report. (*People v. Watts* (1977) 67 Cal.App.3d 173, 178 [136 Cal.Rptr. 496] ["Inquiry into the factual basis for the plea ensures that the defendant actually committed a crime at least as serious as the one to which he is willing to plead"].) Our review of the presentence report indicates little, if any, innocent touching made culpable solely by lewd intent. Nor does Otto contend the presentence report omitted acts by Otto against the victims, as described in the underlying police report, that would constitute lewd behavior based solely on his wrongful intent. Moreover, taking Otto's argument to its logical conclusion, while Penal Code section 288, subdivision (a) is listed as a predicate offense in the SVPA, it would never so qualify when the defendant pled guilty or no contest prior to the preliminary hearing because the offense may be committed by an otherwise innocuous touching coupled with lewd intent.

In addition, consideration of hearsay statements contained in presentence reports is not unique to the SVPA. A probation report is required following every felony conviction in this state. (Pen. Code, § 1203c.) Rule 4.411.5 details the contents of presentence reports, and contemplates that police reports will be used to prepare crime summaries contained therein. (Rule 4.411.5(a)(7)(i).) Defendants are required by statute to have an opportunity to review and challenge inaccuracies in the presentence report. (Pen. Code, §§ 1170, subd. (b), 1203, subd. (b)(2)(D), 1203d; Cal. Rules of Court, rule 4.437(e); see *People v. Scott* (1994) 9 Cal.4th 331, 350-351 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Otto does not contend he failed to receive such an opportunity in the underlying criminal prosecution.

Superior courts consider and rely upon hearsay statements contained in a presentence report to determine whether to place a defendant on probation, and to evaluate his level of culpability when selecting an appropriate sentence. (Pen. Code, § 1203, subd. (b)(3); Cal. Rules of Court, rule 4.411(d).) This includes the court's assessment of aggravating and mitigating factors, such as whether the crime involved great bodily harm or other act disclosing a high degree of viciousness, cruelty, or callousness, whether the victim was particularly vulnerable, whether the crime was carried out with sophistication, whether the defendant took advantage of a position of trust or confidence, whether the defendant played a minor role in the crime, whether the victim participated in the incident and, if so, under what circumstances, and whether the defendant exercised caution to avoid harm or damage. (Rules 4.420(b), 4.421(a)(1), (3), (8), (11), 4.423(a)(1), (2), (6).)

Thus, courts routinely rely upon hearsay statements contained in probation reports to make factual findings concerning the details of the crime. These

findings, in turn, guide the court's sentencing decision—a decision which has a great impact on the defendant's liberty interest. Indeed, the range of sentences available in a case involving one of the sex offenses enumerated in section 6600, subdivision (b) commonly exceeds the two-year liberty interest at issue here. As one Court of Appeal has stated, "In every felony proceeding in the State of California, a probation report is required and must be read and considered by the sentencing judge. [Citation.] The Legislature does not require trial court judges to read and consider 'unreliable' documents as a prerequisite to the imposition of sentence." (*People v. Miller* (1994) 25 Cal.App.4th 913, 918 [31 Cal.Rptr.2d 423].)

Moreover, other than Otto's broad denials that no molestation occurred, which were inconsistent with his no contest plea, he never specifically challenged the accuracy of the victims' statements in the underlying criminal proceeding. Indeed, Otto admitted to Dr. Steen he touched K.W. under her pants, tickling her buttocks and "private areas," and told the probation officer he tickled K.W. on her bottom under her panties.

Otto asserts that because he pled no contest in 1991, he had little motivation to challenge the accuracy of the victims' statements at the time of sentencing for the underlying crimes. Of course, since the 1996 amendment to section 6600, subdivision (a), defendants have been on notice that "[t]he details underlying the commission of an offense that led to a prior conviction . . . may be shown by documentary evidence, including . . . probation and sentencing reports."[5] Even here, at the time of sentencing, Otto was presumably aware that should he reoffend, a trial court would consider the details of his earlier crimes in sentencing him for any future offenses. (See Rules 4.411.5(a)(3) [presentence report includes a "summary of the defendant's record of prior criminal conduct"], 4.414(b)(1) [criteria affecting the decision to grant or deny probation include defendant's prior record of criminal conduct, and whether the record "indicates a pattern of regular or increasingly serious criminal conduct"], 4.421(b)(2) [circumstances in aggravation for purposes of sentencing include whether defendant's prior convictions are "numerous or of increasing seriousness"].)

Moreover, by the time of the SVP proceeding, Otto was fully aware of the statements' potential significance. Nevertheless, Otto's own expert opined Otto had been convicted of sexually violent predatory offenses against two or more victims. As the trial court stated, "[t]here has been really no

---

[5]Thus, to the extent defendants are "discourage[d] . . . from entering into plea agreements and encourage[d] . . . instead to cross-examine individuals who made the statements appearing in the reports" (conc. opn., *post*, at p. 219), this is a consequence of the SVPA, not our opinion.

substantial dispute that the criteria" regarding the predicate prior convictions "were met in this matter."

Implicit in the above discussion are other factors (in addition to the reliability of the victims' hearsay statements) that diminish the risk of an erroneous deprivation of rights as a result of reliance on the hearsay statements, and the probable value of additional or substitute procedural safeguards. Otto had the opportunity to present the opinions of two psychological experts, and cross-examine any prosecution witness who testified. Moreover, the trial court retained discretion under Evidence Code section 352 to exclude unreliable hearsay, which acted as a further safeguard against any due process violation.

Nor does reliance on the victims' hearsay statements deny Otto any right of confrontation. There is no right to confrontation under the state and federal confrontation clause in civil proceedings, but such a right does exist under the due process clause. (*Malinda S.*, *supra*, 51 Cal.3d at p. 383, fn. 16 ["both the federal and state Constitutions confine the express right of confrontation to criminal defendants"].) Here, Otto had the opportunity to cross-examine any prosecution witness who testified. Because he did not attempt to call any witnesses other than a psychological expert, we need not decide in this case whether he had a due process right to call witnesses such as the victims or other percipient witnesses. We note, however, Otto had the opportunity to confront these witnesses at the time the underlying charges were filed, but instead chose to accept a plea bargain. According to his reply brief, "one of the purposes of" this bargain "was to spare the victims' having to testify."

For these reasons we also reject Otto's related argument that admission of and reliance on the victims' hearsay statements shifts the burden of proof. Rather, it simply reflects the view that such evidence is sufficiently reliable to be considered by the trier of fact and the evaluating psychological experts.

Third, we consider the government's interest, including the function involved, and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. The express purpose of the SVPA articulates the strong government interest in protecting the public from those who are dangerous and mentally ill. Requiring the government to adduce live testimony from the victims could potentially impede this purpose. The SVP proceeding occurs at the end of the defendant's sentence, which may be years after the events in question. As one Court of Appeal has observed, if the People can "obtain civil commitment of sexually violent predators only in cases where the conviction record was extensive, and

included victim testimony . . . as to the details of the sexually violent offense," in those cases where "the defendant pled guilty before the preliminary hearing, or the victims' testimony was not sufficient to establish the details of the offense as required by the SVP Act, the state would never be able to meet its burden." (*People v. Superior Court (Howard)*, *supra*, 70 Cal.App.4th at p. 155 [concluding victim hearsay statements contained in a probation report admissible at SVP probable cause hearing].)

Fourth, as delineated above, reliance on the hearsay evidence does not impede Otto's dignitary interest in being informed of the nature, grounds, and consequences of the SVP commitment proceeding, or disable him from presenting his side of the story before a responsible government official.

### Disposition

The judgment of the Court of Appeal is affirmed.

Baxter, J., Werdegar, J., and Chin, J., concurred.

**GEORGE, C. J.**—I concur in the majority's conclusion that Welfare and Institutions Code section 6600, subdivision (a)(3), authorizes the admission of hearsay contained in documentary evidence that is introduced to prove the details underlying a prior conviction at issue in a sexually violent predator commitment proceeding. I further concur in the majority's determination that the admission of the particular hearsay statements in the present case did not deny defendant due process of law. I write separately, however, because I disagree with the majority's suggestion that the conviction of a crime, after trial or upon a plea of guilty, to which such hearsay statements relate constitutes the most critical factor demonstrating the reliability of the statements. (Maj. opn., *ante*, at p. 211.) As I shall explain, such a conviction does not necessarily establish the reliability of hearsay statements contained in presentence reports. The circumstances of each case must be evaluated to assess whether hearsay contained in documentary evidence is sufficiently reliable to be admitted in a proceeding under the Sexually Violent Predators Act (SVP Act) (Welf. & Inst. Code, § 6600 et seq.).[1]

A prerequisite to a commitment pursuant to the SVP Act is a factual finding beyond a reasonable doubt that the defendant is a sexually violent predator. (§ 6604.) Such a finding must include a determination that the defendant has been convicted of a sexually violent offense against two or more victims. (§ 6600, subd. (a)(1).)

Sexually violent offenses, within the meaning of section 6600, include specified crimes that (1) are committed by force, violence, duress, menace,

---

[1]Subsequent undesignated statutory references are to the Welfare and Institutions Code.

or fear of immediate and unlawful bodily injury (*id.*, subd. (b)); or (2) involve substantial sexual conduct with a child under the age of 14 years (§ 6600.1, subd. (a)). " 'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." (§ 6600.1, subd. (b).)

Among the crimes that can support a finding that the defendant has committed a sexually violent offense is a violation of Penal Code section 288, subdivision (a), which provides in relevant part: "Any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." As the majority recognizes, no particular form of physical contact is required to constitute a violation of this statute; a conviction is authorized for any and all sexually motivated touching of a child under the age of 14 years. (*People v. Martinez* (1995) 11 Cal.4th 434, 438, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037].) Thus, Penal Code section 288, subdivision (a), does not require that the crime have been accomplished by force, violence, duress, menace, or fear of injury, or that it involved substantial sexual conduct. Therefore, a defendant's violation of this statute does not necessarily establish that he or she committed a sexually violent offense within the meaning of Welfare and Institutions Code section 6600.

Accordingly, in a proceeding under the SVP Act, evidence that the defendant was convicted of violating Penal Code section 288, subdivision (a)—without additional evidence of the circumstances of the crime—does not prove that the defendant has been convicted of a sexually violent offense. Welfare and Institutions Code section 6600, subdivision (a)(3), authorizes the People to prove such circumstances with documentary evidence, including sentencing reports. As established in the majority opinion, this provision also authorizes the admission of hearsay statements contained in these reports to establish the details of the crime.

The majority concludes, as do the People, that due process of law requires that hearsay statements contained in sentencing reports bear special indicia of reliability before they can be admitted to prove the details of a prior conviction in an SVP proceeding. This conclusion is supported by our decision in *In re Lucero L.* (2000) 22 Cal.4th 1227 [96 Cal.Rptr.2d 56, 998 P.2d 1019] (*Lucero L.*), which held that the out-of-court statements of children who are subject to juvenile dependency hearings (§ 300), if not corroborated by other evidence, are sufficient to support a jurisdictional

finding only if the statements show particular indicia of reliability. In support of this holding, we emphasized a parent's important liberty interest in maintaining custody of his or her child, the risk of an erroneous deprivation of that interest in light of the hearsay declarant's legal incompetence to testify and the parent's inability to cross-examine the child, and the governmental interest in producing an accurate and just resolution of dependency proceedings. (*Lucero L.*, *supra*, 22 Cal.4th at p. 1247.) " 'The nonexhaustive list of factors that the United States Supreme Court has cited as relevant to the reliability of hearsay statements made by child witnesses in sexual abuse cases are (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) use of terminology unexpected of a child of a similar age; and (4) lack of motive to fabricate. [Citation.]' [Citation]." (*Id.* at p. 1239.)

The private interest at stake in the present case is compelling. A sexually violent predator faces a complete loss of liberty for a period of two years, followed by potentially indefinite recommitment proceedings in which the People might contend that he or she is collaterally estopped from relitigating the issue whether the prior conviction was sexually violent. As in *Lucero L.*, *supra*, 22 Cal.4th at page 1247, the governmental interest in preventing child abuse is vitally important, but so is the interest in an accurate and just resolution of the proceeding. By requiring that victim hearsay statements in sentencing reports bear special indicia of reliability, the majority in the present case, as in *Lucero L.*, determines that there is a significant risk of an erroneous deprivation of liberty based upon such hearsay statements.

Although the majority states that relevant factors in assessing the reliability of hearsay statements contained in sentencing reports include the circumstances in which the statements were made, the majority's conclusion that the statements in the present case are inherently reliable is based upon other considerations: (1) Otto's conviction of the crime to which the statements relate; and (2) his failure to challenge the accuracy of the statements in the underlying criminal proceeding. According to the majority, Otto's conviction is the most critical factor demonstrating the reliability of the statements, and this factor "will nearly always be present in an SVP proceeding," because a conviction to which the hearsay statements relate is a prerequisite to considering the sentencing report. (Maj. opn., *ante*, at p. 211.) The majority further relies upon the circumstances that Otto chose to enter into a plea agreement rather than confront the witnesses in the criminal proceeding, and that he had the opportunity before he was sentenced to review and challenge any inaccuracies in the sentencing report.

A conviction, however, does not necessarily constitute a critical factor demonstrating the reliability of hearsay statements in a sentencing report.

Even where a defendant pleads guilty and recites that the sentencing report contains a factual basis for the plea, the report might contain accounts of victim statements describing conduct that *relates* to the offense, but that nevertheless is *unnecessary* to establish the elements of the offense. For example, a sentencing report might include statements indicating that the defendant, with lewd intent, (1) touched the arm of a minor 13 years of age; (2) threatened the minor with physical violence if the minor resisted that touching; and (3) engaged in other substantial sexual contact with the minor. All three of these statements relate to the crime set forth in Penal Code section 288, subdivision (a). The first statement, by itself, provides a factual basis for a plea of guilty to the offense set forth in that statute. Accordingly, a conviction under this statute does not establish the reliability of the second or third statements, which would be the only statements supporting a finding that the defendant committed a sexually violent offense within the meaning of the SVP Act.

The circumstance that a defendant is authorized in the underlying criminal proceeding to challenge details in a sentencing report does not necessarily establish that the hearsay statements contained therein are sufficiently reliable to satisfy due process concerns. Penal Code section 1170, subdivision (b), and rule 4.437 of the California Rules of Court guide a sentencing court's decision whether to impose the lower, middle, or upper term when a penal statute specifies three possible terms of imprisonment. The purpose of the presentence report is to assist the court in assessing whether mitigating or aggravating circumstances justify the imposition of the lower or upper term rather than the middle term. In this context, "either party or the victim . . . may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts." (Pen. Code, § 1170, subd. (b); see also Cal. Rules of Court, rule 4.437(e).)

These provisions seldom are relevant when a defendant enters into an agreement to plead guilty in exchange for the prosecution's recommendation that the defendant receive a particular sentence. In this situation, the defendant has little, if any, incentive to challenge particular statements contained in the presentence report. Indeed, as the majority recognizes, the purpose of such plea agreements often is to avoid requiring that the victims testify at trial. If a defendant decides to challenge information contained in a presentence report, he or she possesses the right to call witnesses and present other evidence in mitigation of the punishment to be imposed. (Pen. Code, § 1204.) A prosecutor might decide to withdraw a plea agreement if the defendant chooses to pursue such a course of action. Thus, by concluding that hearsay statements in presentence reports are reliable because the defendant can challenge them before sentencing (or because the defendant

could have cross-examined the declarants by going to trial), the majority effectively will discourage some defendants from entering into plea agreements and encourage them instead to cross-examine individuals who made the statements appearing in the reports. Such an effect thwarts—rather than furthers—the purposes underlying Welfare and Institutions Code section 6600, subdivision (a)(3).

In the present case, Otto did not subpoena the hearsay declarants or any other witnesses for the purpose of challenging the accuracy of the statements contained in the presentence report describing the details of his crime.[2] Nor did he demonstrate that these witnesses were unavailable. Furthermore, as the majority opinion explains, the presentence report describes little, if any, touching that could support a conviction but that would not constitute substantial sexual conduct, and the report indicates that Otto admitted significant sexual conduct with the victims. Under these particular circumstances, I agree that the statements are sufficiently reliable to establish that Otto was convicted of a sexually violent offense within the meaning of section 6600, without considering whether the circumstances surrounding the making of the statements afford them special indicia of reliability.

In sum, although I believe that a defendant's failure to challenge statements in a sentencing report sometimes can be a relevant factor in assessing the reliability of such statements, as can be the fact of his or her earlier conviction, I disagree with the majority to the extent it suggests that these factors necessarily or generally establish special indicia of reliability in a proceeding pursuant to the SVP Act. As in *Lucero L.*, *supra*, 22 Cal.4th 1227, if the declarant of hearsay statements contained in a presentence report is legally incompetent or otherwise unavailable to testify if called as a witness by the defendant, such statements can support a necessary finding in a proceeding under the SVP Act only if they are corroborated by other evidence, or the circumstances surrounding the making of the statements demonstrate that they are inherently reliable. In the case of hearsay statements made by child witnesses in sexual abuse cases, reliability can be established by demonstrating, among other things, spontaneity and consistent repetition, the mental state of the declarant, use of terminology

---

[2] The majority reserves the issue whether a defendant in a proceeding under the SVP Act has a due process right to call as witnesses the declarants of hearsay statements introduced against the defendant or other percipient witnesses. Nothing in the SVP Act suggests that the defendant is precluded from calling such witnesses, and the majority does not allude to any other legal justification for prohibiting the presentation of testimony relevant to factual issues to be litigated in the jury or court trial to which the defendant is entitled under section 6603. (Cf. *In re Malinda S.* (1990) 51 Cal.3d 368, 382-385 [272 Cal.Rptr. 787, 795 P.2d 1244] [parents have due process right to subpoena and examine individuals whose hearsay statements are contained in social studies admitted in juvenile dependency proceedings].)

unexpected of a child of a similar age, and lack of a motive to fabricate the statement.

Kennard, J., concurred.

Appellant's petition for a rehearing was denied September 12, 2001.